**RECORD NO. 17-1634(L)**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

─────────────────

## IMPACTOFFICE LLC,

A Maryland Limited Liability Company

*Plaintiff-Appellant*,

v.

## SAMUEL SINIAVSKY,

*Defendant-Appellee.*

─────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

─────────────────

### OPENING BRIEF FOR APPELLANT
### IMPACTOFFICE LLC

─────────────────

Timothy F. Maloney, Esq.
Jay P. Holland, Esq.
Alyse L. Prawde, Esq.
JOSEPH, GREENWALD & LAAKE, PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
301-220-2200
tmaloney@jgllaw.com
jholland@jgllaw.com
aprawde@jgllaw.com

Douglas C. Herbert, Esq.
LAW OFFICE OF
 DOUGLAS C. HERBERT
1730 Rhode Island Avenue NW
Suite 608
Washington, DC 20036
202-659-1400
dougherbert@dcherbertlaw.com

*Counsel for Appellant*

─────────────────

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __17-1759__        Caption: __ImpactOffice LLC v. Robert Paul_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__ImpactOffice LLC_____
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☑YES ☐NO
        If yes, identify all parent corporations, including all generations of parent corporations:
        Impact Office Products of Washington, Inc.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                          ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                        ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Alyse L. Prawde                        Date: _____July 7, 2017_____

Counsel for: ImpactOffice LLC

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____July 7, 2017_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Alyse L. Prawde                                      _____July 7, 2017_____
        (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __17-1634__    Caption: __ImpactOffice LLC v. Samuel Siniavsky__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__ImpactOffice LLC__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                      ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:
      Impact Office Products of Washington, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                          ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Timothy F. Maloney                    Date:    June 1, 2017

Counsel for: ImpactOffice LLC

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____June 1, 2017____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Timothy F. Maloney                                June 1, 2017
(signature)                                             (date)

- 2 -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF JURISDICTION.....................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................2

STATEMENT OF THE CASE............................................................2

    A.    Statement of Facts ..............................................................3

        1.  Samuel Siniavsky ....................................................5

        2.  Daniel Chapman .....................................................6

        3.  Robert Paul ..........................................................7

    B.    Relevant Procedural History and Rulings ...........................11

        1.  The *Siniavsky* and *Chapman* cases...................................11

        2.  The *Paul* case ......................................................18

SUMMARY OF ARGUMENT ........................................................19

ARGUMENT ...........................................................................21

    I.    Standard of Review ..........................................................21

    II.   The district court erred in finding that the non-solicitation provisions in Appellees' employment agreements with Impact are unenforceable. .22

        A.  The district court erred in finding that Appellees' non-solicitation provisions are facially overbroad because they do not permit Appellees to "accept" business from Impact customers .................24

        B.  The non-solicitation provisions are permissible even if they restrict solicitation of "all" customers of Impact and its affiliates..............29

i

C. The district court erred in finding that, even if a non-solicitation provision applying to all customers is overbroad, money damages could not be recovered for solicitation of customers with whom the former employee had personal contacts ..........................................35

D. The district court erred in not applying the flexible approach to blue penciling and allowing language of the non-solicitation agreement to be added or changed .......................................................................38

CONCLUSION ..................................................................................45

CERTIFICATE OF COMPLIANCE..................................................46

REQUEST FOR ORAL ARGUMENT .............................................46

CERTIFICATE OF SERVICE .........................................................47

# TABLE OF AUTHORITIES

## Cases

*Allegis Group, Inc. v. Jordan*, 2014 U.S. Dist. LEXIS 78567 (D. Md. June 10, 2014) ................................................................................ 26, 42

*Ameritox, Ltd. v. Savelich*, 92 F.Supp.3d 389 (D. Md. 2015) ................... 22, 30, 31

*Becker v. Bailey*, 268 Md. 93 (1973) ................................................ 35, 36

*Bob Pagan Ford, Inc. v. Smith*, 638 S.W.2d 176 (Tex. App. 1982)....................... 40

*Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011) ........................................ 43

*Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401 (4th Cir. 2002) ...... 21, 22

*Corporate Haelthcare Fin., Inc. v. BCI Holdings Co.*, 2006 U.S. Dist. LEXIS 51552 (D. Md. July 13, 2006)..................................................... 26, 40

*Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn. 1980) ............. 40

*Deutsche Post Global Mail, Ltd. v. Conrad*, 292 F.Supp.2d 748 (D. Md. 2003).... 42

*Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. Appx. 435 (4th Cir. Nov. 19, 2004) ................................................................................ 15, 42, 43

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ................................ 22

*Entegee, Inc. v. Korwek*, 2015 U.S. Dist. LEXIS 118263 (D. Conn. Sept. 4, 2015) ................................................................................................... 20, 34

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)........................................................... 42

*Fournil v. Turbeville Ins. Agency, Inc.*, 2009 U.S. Dist. LEXIS 16303 (D.S.C. Mar. 2, 2009) ........................................................................................ 27

*Fowler v. Printers II, Inc.*, 89 Md. App. 448 (1991) ..................... 32, 33, 36, 37, 39

*General Parts Distr., LLC v. St. Clair*, 2011 U.S. Dist. LEXIS 145055 (D. Md. Dec. 14, 2011)....................................................................................32

*Gill v. Computer Equip. Corp.*, 266 Md. 170 (1972) ...................................... 20, 31

*Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017) ...............................................22

*Holloway v. Faw, Casson & Co.*, 319 Md. 324 (1990) ...................................*Passim*

*Holloway v. Faw, Casson & Co.,* 78 Md. App. 205 (1989) ............................*Passim*

*Howard Johnson & Co. v. Feinstein*, 609 N.E.2d 930 (Ill. App. Ct. 1993)............27

*Intelus Corp. v. Barton*, 7 F.Supp.2d 635 (D. Md. 1998)........................................31

*Medispec, Ltd. v. Chouinard*, 133 F.Supp.3d 771 (D. Md. 2015)...........................39

*Mercator Risk Servs., Inc. v. Girden*, 2009 U.S. Dist. LEXIS 17879 (S.D.N.Y. 2009) .................................................................................................................33

*Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11 (Fla. 1974) ....................................40

*Millward v. Gerstung Int'l Sport Ed.*, 268 Md. 483 (1973)................. 22, 30, 31, 35

*Minor v. Botswick Labs, Inc.,* 669 F.3d 428 (4th Cir. 2012) ..................................43

*Partylite Gifts, Inc. v. Macmillan*, 895 F.Supp.2d 1213 (M.D. Fla. 2012)....... 20, 34

*Perry v. Moran*, 748 P.2d 224 (Wash. 1987)............................................. 26, 27, 29

*Raimonde v. Van Vlerah*, 325 N.E.2d 544 (Ohio 1975) ..........................................40

*Ruhl v. F.A. Bartlett Tree Expert Co.*, 245 Md. 118 (1967) ...................................31

*Severn Mktg. Assocs. v. Doolin*, 2010 U.S. Dist. LEXIS 102992 (D. Md. 2010) ...................................................................................... 30, 31, 32

*Silver v. Goldberger*, 231 Md. 1 (1963) ................................................................22

*Smith, Batchelder & Rugg v. Foster*, 406 A.2d 1310 (N.H. 1979) ........................40

*Solari Industries, Inc. v. Malady*, 264 A.2d 53 (N.J. 1970) ............................. 40, 41

*St. Paul Fire & Mar. Ins. Co. v. Jacobson*, 48 F.3d 778 (4th Cir. 1995) ...............42

*Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526 (Fla. Dist. Ct. App. 2003).......34

*Tuttle v. Riggs-Warfield-Roloson, Inc.*, 251 Md. 45 (1968) ................. 20, 25, 26, 31

*USI Ins. Servs. LLC v. Miner*, 801 F.Supp.2d 175 (S.D.N.Y. 2011)......................27

*Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 556 S.E.2d 331 (N.C. App. 2001)...34

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1
28 U.S.C. § 1332 .......................................................................................................1

**Rules**

Fed. R. Civ. P. 12(c).................................................................................................21
Fed. R. Civ. P. 12(b)(6).............................................................................................21

Fourth Cir. Local R. 32.1 .........................................................................................43

## <u>STATEMENT OF JURISDICTION</u>

Appellant ImpactOffice LLC ("Impact") appeals from the decisions of the United States District Court for the District of Maryland granting Appellees Samuel Siniavsky, Dennis Chapman, and Robert Paul's motions for judgment on the pleadings and dismissing Impact's counterclaim against Paul. This is an appeal arising from three separate district court cases: *ImpactOffice LLC v. Siniavsky*, Civil Action No. 8:15-cv-3481; *Chapman v. ImpactOffice LLC*, Civil Action No. 8:16-cv-1851; and *Paul v. ImpactOffice LLC*, Civil Action No. 8:16-cv-2686. The district court had jurisdiction over these actions pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

On April 19, 2017, the district court issued a final appealable order in the Siniavsky and Chapman cases. (JA 151-52). Impact noted a timely appeal to this Court on May 17, 2017, and Siniavsky and Chapman filed cross-appeals on May 31, 2017. (JA 153-56). On June 6, 2017, the district court issued a final appealable order in the Paul case. (JA 292). Impact noted a timely appeal on June 21, 2017, and Paul filed a cross-appeal on June 27, 2017. (JA 293-96). This Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in finding that Appellees' non-solicitation provisions are facially overbroad because they restrict Appellees from "accept[ing]" business from Impact customers.

2. Whether the district court erred in finding that Appellees' non-solicitation provisions are overbroad as applied to Appellees because the provisions restrict solicitation of all customers of Impact and its affiliates, not just the customers with whom Appellees had contact while employed with Impact.

3. Whether the district court erred in finding that Impact was precluded from seeking money damages against Appellees for solicitation of customers with whom Appellees did have personal contact while employed with Impact.

4. Whether the district court erred in not applying the flexible blue pencil approach which would have permitted the non-solicitation provisions to be blue penciled to the extent that they are enforceable as to Appellees.

## STATEMENT OF THE CASE

This case concerns three Impact sales representatives who were recruited by Impact's competitor, W.B. Mason Co., Inc. ("W.B. Mason"), as part of a calculated plan to drive Impact out of business by hiring its sales force. (JA 258). Appellees Dennis Chapman and Robert Paul have valid, enforceable non-

competition and non-solicitation agreements with Impact, and Appellee Samuel Siniavsky has a valid, enforceable non-solicitation agreement.

These three agreements—which the Appellees knowingly and voluntarily signed—are narrowly tailored to protect Impact's legitimate business interest in the goodwill generated by its sales representatives while employed with Impact. These agreements are not intended to insulate Impact from competition. Rather, their purpose it to limit departing sales representatives, who are in constant contact with customers, from taking the customer goodwill they helped create for Impact.

The protections provided to Impact by the non-compete and non-solicitation provisions are essential to Impact's ability to successfully conduct its business and protect its legitimate competitive interests. Absent such protections, employees like Appellees could quit their job with Impact, take advantage of investments Impact had made in them, and unfairly raid customers using the goodwill generated through their relationships with customers.

### A. Statement of Facts

Impact is a Maryland corporation engaged in the business of selling office supplies, printing supplies and services, office furniture, breakroom supplies, and other related services and products. (JA 260). Impact's headquarters are located in Beltsville, Maryland, and it transacts business throughout the state of Maryland and the region. (JA 260). Impact does not have retail stores, but delivers its

products directly to its business customers.  (JA 14).  Impact has several affiliated

companies, including Impact Office Products, LLC; George W. Allen Co.; N.B.A.;

DeskMate; N.B.A.; and Councell Computer Products.  (JA 118).

W.B. Mason is the largest, privately owned office products dealer in the

United States.  (JA 258).  Like Impact, W.B. Mason is engaged in the business of

selling office supplies, printing supplies and services, office furniture, and other

related services and products.  (JA 120).  Impact and W.B. Mason have been direct

competitors in Maryland and the Washington, D.C. area for at least the last 10

years.  (JA 260).  W.B. Mason is a much larger company than Impact, with over

3,400 employees working in 60 locations. (JA 272).  Impact, on the other hand,

employs approximately 140 individuals, and about 26 of whom are sales

representatives.  (JA 272).  Impact generated approximately $60 million in sales in

2015.  (JA 272).

W.B. Mason has engaged in a calculated scheme to aggressively recruit

Impact employees, despite knowing that most of these employees have non-

competition and/or customer non-solicitation agreements with Impact.  (JA 258).

W.B. Mason aggressively solicited and continues to solicit Impact employees in an

attempt to acquire and profit from the goodwill generated by Impact and its sales

force with its current customer base.  (JA 260).  Impact's ability to make sales is

based in substantial part on the personal relationships with customers and potential customers developed by members of its sales team.  (JA 14).

In May 2016, the scheme to hire Impact sales representatives and customer service representatives intensified.  (JA 258).  In May alone, W.B. Mason solicited seven employees from Impact, including Appellee Chapman.  (JA 258).

### 1.  Samuel Siniavsky.

In August 2010, Siniavsky was hired by Impact as a sales representative in New Jersey and the Philadelphia metropolitan area.  (JA 118).  On August 27, 2010, Impact[1] and Siniavsky entered into a Proprietary and Nonsolicitation Agreement.  (JA 8-11).  Section 2.2 of the Nonsolicitation Agreement prohibits Siniavsky from soliciting business related to the office products or services from any customer or prospective customer of Impact for 12 months after Siniavsky's employment with Impact ends.  (JA 9).  This provision provides in relevant part that Siniavsky may not:

> Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company. For purposes hereof, a customer of the Company or its Affiliates shall mean any person or business to whom the Company or its Affiliates sold products or rendered services during the last 12 months Employee was employed by the Company.

---

[1] At the time the agreement was executed, Impact's corporate name was Impact Office Products, LLC.  (JA 12).  The name was changed to Appellant's current name, ImpactOffice LLC, on June 5, 2012.  (JA 12).

(JA 9).

After five years as an Impact employee, Siniavsky resigned on April 17, 2015. (JA 12). He is now employed as a sales representative for W.B. Mason in the Philadelphia area. (JA 13). Siniavsky solicited and accepted business from Impact's customers during the 12 months following his resignation from Impact, in violation of his non-solicitation agreement. (JA 16-17).

## 2. Daniel Chapman.

Impact acquired Chapman's previous employer, Dante Technologies, in 2012. (JA 166). Chapman subsequently became employed with Impact and signed a Proprietary and Nonsolicitation Agreement on November 26, 2012. (JA 179-83). The Agreement includes non-solicitation and non-compete provisions which state:

> 2. *Non-Solicitation.* While the Employee is employed by the Company and for the periods of time, specified in Sections 2.1, 2.2, and 2.3, after the cessation of the Employee's employment with the Company for any reason whatsoever, the Employee shall not, to or for the benefit or account of the Employee or to or for the benefit or account of any other person or entity, directly or indirectly, without the prior written consent of the Company, which may be withheld for any reason whatsoever (even if unreasonable) in the Company's sole, absolute and subjective discretion:

> [...]

> 2.2. Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company. For purposes hereof, a customer of the

Company or its Affiliates shall mean any person or business to whom the Company or its Affiliates sold products or rendered services during the last 12 months Employee was employed by the Company.

2.3. Become employed by a competitor (companies who sell office supplies, coffee & breakroom supplies, computer supplies, office furniture, printer maintenance repair and service, and any other products and services sold by the Company or its Affiliates) of the Company or its Affiliates, located within a radius of ninety miles from any location of the Company or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company. In the event that Employee is involuntarily terminated by the Company, the Company agrees to waive this 6 month non-compete requirement.

(JA 181).  During his employment with Impact, his sales activities were primarily conducted in Northern Virginia and the District of Columbia, with a small amount of customers in Maryland.  (JA 216).

Chapman resigned his employment with Impact on May 27, 2016.  (JA 216). At the time of his resignation, Chapman was responsible for approximately 87 customers.  (JA 216).  In the year prior to his resignation, his customers generated approximately $853,000 in sales.  (JA 216).  Chapman is currently employed by Impact's competitor, W.B. Mason.  (JA 165).

**3.  Robert Paul.**

Prior to his employment with Impact, Paul owned an office supply business called The Complete Office Course, Inc.  (JA 261).  After Paul's company commenced a chapter 11 case, Impact acquired the company, signing an Asset Purchase Agreement on November 14, 2008.  (JA 261).  At that time, Paul became

7

employed by Impact as an independent sales representative and entered into a

Proprietary Information and Nonsolicitation Agreement with Impact.  (JA 261).

Paul worked out of Impact's Baltimore office prior to working in Impact's

Philadelphia office.  (JA 261).

On December 20, 2012, Paul entered into a new Proprietary and Non-

Solicitation Agreement with Impact.  (JA 240-43).  This Agreement included both

non-compete and non-solicitation provisions.  (JA 240-43).  Paul agreed that he

would not compete with Impact for six months following the date of his

termination. (JA 241).  Section 2.3 of his employment agreement provides that

Paul shall not:

> Become employed by a competitor (companies who sell office supplies,
> coffee & breakroom supplies, computer supplies, office furniture, printer
> maintenance repair and service, and any other products and services sold by
> the Company or its Affiliates) of the Company or its Affiliates, located
> within a radius of ninety miles from any location of the Company or its
> Affiliates within 6 months of the date of the cessation of the Employee's
> employment with the Company. In the event that Employee is involuntarily
> terminated by the Company, the Company agrees to waive this 6 months
> non-compete requirement.

(JA 241).  Paul also agreed that he would not solicit or accept business of any

Impact customer for six months following the date of his termination.  (JA 241).

Section 2.2 of his employment agreement provides that Paul shall not:

> Solicit or accept, directly or indirectly, the business of any customer or
> prospective customer of the Company, or its Affiliates, for the purpose of
> selling or distributing office products or services sold by the Company, or its
> Affiliates, within 6 months of the date of the cessation of the Employee's

8

employment with the Company. For purposes of this Section 2.2, a customer of the Company, or its Affiliates, shall mean any person or business to whom the Company, or its Affiliates, sold products or rendered services during the last 12 months Employee was employed by the Company and any person or business to or for which the Company, or its Affiliates, submitted or presented, or was in the process of submitting or presenting a bid, quote, proposal or agreement relating to the sales of any products or services, within the 12 month period immediately prior to the date on which Employee's employment with the Company terminated.

(JA 241).

During his seven years of employment with Impact, Paul was a successful employee and contributed a significant percentage of Impact's sales. (JA 262). Of Impact's $60 million in sales in 2015, approximately $2.2 million was from Paul's customers. (JA 262). On July 26, 2016, Paul filed a complaint in the district court stating he resigned from Impact on July 25, 2016 and was now working at W.B. Mason. (JA 227). Paul never provided any other notice to anyone at Impact that he was planning to resign or that he did in fact resign. (JA 251).

Despite resigning on July 25, Paul continued to access his Impact emails the next day to send business-related emails. (JA 262). In the week before he resigned, his assistant was repeatedly contacted by a W.B. Mason recruiter in an attempt to also hire her from Impact. (JA 262).

Paul orchestrated a scheme to induce Impact customers to stop working with Impact and instead commence a business relationship with W.B. Mason by soliciting Impact's customers through LinkedIn, the online professional

networking service.  (JA 263).  On or around July 27, 2016, following his resignation, Paul sent requests through LinkedIn to Impact customers, asking them to become a "connection" with him on the site.  (JA 263).  At the time of these requests, his job description on the site said "Senior Account Manager for ImpactOffice."  (JA 263).  His job title continued to say "Senior Account Manager for ImpactOffice" until or after August 1, 2016.  (JA 263).

Paul changed his job description to say he was now employed by W.B. Mason approximately one week after he resigned from Impact.  (JA 263).  This employment change would have been posted on the main page of LinkedIn for all of his connections to view and alerting them to his new employment.  (JA 263).  Paul knowingly connected with and solicited Impact's customers following his resignation so they would be notified he now works for W.B. Mason, in an attempt to solicit their business for the benefit of W.B. Mason.  (JA 263).

One Impact customer sent Paul a message on LinkedIn on or about August 3, 2016, after being notified of his new employment, stating, in relevant part: "So, looks like you moved to WB. Perhaps we should get together soon to discuss prices. I know you have purchased some things from WB, but not sure what is on that list. Give me a call at your…"  (JA 264).  Furthermore, just a week before his resignation, Paul requested usage reports for 2016 for 11 of his customer accounts, which show the products and services those customers ordered, the quantity of

10

products, the amount paid and other data.  (JA 264).  Upon information and belief, this information as requested with the intent of using it to solicit Impact's customers.  (JA 264).

### B. Relevant Procedural History and Rulings

#### 1. The *Siniavsky* and *Chapman* cases

Following Siniavsky's resignation from Impact, and his solicitation of Impact customers while employed by W.B. Mason, Impact filed a complaint against him on November 16, 2015.  *See ImpactOffice LLC v. Siniavsky*, Civil Action No. 8:15-cv-3481. Impact filed an amended complaint on November 26, 2015.  (JA 12-21).  The one-count amended complaint for breach of contract alleged that Siniavsky had breached the non-solicitation provision of his agreement by soliciting and/or accepting business from multiple Impact customers, including National Refrigeration Inc. and the Y.A.L.E. Schools.  (JA 12-21).  The amended complaint sought temporary, preliminary, and permanent injunctive relief prohibiting Siniavsky from soliciting or accepting business from Impact's customers or potential customers or otherwise violating the nonsolicitation agreement.  (JA 18-19).  Impact also sought damages and for the court to declare all profits derived from Siniavsky's wrongful conduct to be held in a constructive trust for the benefit of Impact.  (JA 19).

Siniavsky filed a Counterclaim on December 9, 2015, for declaratory judgment, breach of contract, and fraud. (JA 22-46). On July 19, 2016, Siniavsky filed a motion for judgment on the pleadings. The district court held a joint hearing on Siniavsky and Chapman's motions for judgment on the pleadings on October 24, 2016. (JA 47-116).

Chapman filed a declaratory judgment action against Impact on June 3, 2016. *See Chapman, et al. v. ImpactOffice LLC,* Civil Action No. 8:16-cv-01851-TDC.[2] He filed an amended complaint on June 9, 2016. (JA 165-203). Chapman filed a motion for judgment on the pleadings on July 19, 2016.

Following the joint hearing, the district court issued a memorandum opinion and order on November 18, 2016, granting Siniavsky's motion and granting in part and denying in part Chapman's motion. (JA 117-38). The court ruled that Chapman's non-competition provision was wider than necessary, finding:

> The scope of the proscribed activity is not limited to employment in positions similar to what Chapman held at Impact but instead would prohibit employment in any capacity at a competitor. The restriction is therefore wider than necessary and is not reasonably tailored to protect Impact's interest in preventing the loss of customer goodwill.

(JA 123).

---

[2] The other Plaintiff, Erica Knott, voluntarily dismissed the matter. (JA 140). She was a former Impact employee who also resigned on May 27, 2016 and began working for W.B. Mason. (JA 165). No actual controversy existed, as she never signed a non-competition or non-solicitation agreement with Impact.

The district court determined that the non-competition provision "focuses on the nature of the competitor rather than the work performed by the former employee." (JA 281-82). The court explained:

> The language of the provision would bar Chapman from working for an Impact competitor in any position, even if that position afforded him no opportunity to take advantage of any personal relationships with customers that he had developed while at Impact. Such a provision does not reflect a narrowly tailored approach to safeguarding customer goodwill. Instead, the exceedingly broad language serves as a general hindrance to competition, an unprotected interest.

(JA 282). The court found it did not need to address Chapman's arguments that the definition of "competitor" and the geographic limitations were overbroad and unenforceable. (JA 282).

As to the non-solicitation provisions, the district court found that the language prohibiting a former employee from "accept[ing]" business from any Impact customer and soliciting business from any "prospective customer of Impact" was facially overbroad, and that "[t]hese restrictions go well beyond what is reasonably necessary to protect Impact's legally recognized interest in safeguarding customer goodwill." (JA 125). The court disagreed with Chapman and Siniavsky's arguments that the language restricting solicitation of all of a company's customers is facially overbroad and instead found that such provisions "must instead be reviewed with considerations of the specific facts and circumstances at issue." (JA 128).

13

The court determined "that the 'or accept' and 'or prospective customer' restrictions can be excised under the blue pencil rule as applied under Maryland law." (JA 130). The provision with that language excised reads:

> Solicit ~~or accept~~, directly or indirectly, the business of any customer ~~or prospective customer~~ of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company of its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company.

(JA 131).

In purporting to examine the facts and circumstances, the district court looked solely at the size of Siniavsky's customer base compared to the national customer base of Impact and its Affiliates; the geographic region where Siniavsky practiced; and his total sales for the following year. (JA 132). The court determined that there were no allegations Siniavsky conducted Impact sales in any area beyond the Philadelphia metropolitan area and that there were segments of the customer base with which he never interacted. (JA 132).

Merely because of these two facts, the court concluded that "upon consideration of the undisputed facts, the restrictive covenant barring solicitation of all Impact customers is not reasonably tied to Impact's interest in protecting customer goodwill because it covers a larger customer base than that with which Siniavsky could have developed personal relationships." (JA 132). The court determined that Siniavsky's agreement was therefore overbroad and unenforceable

14

as applied to him and that "additional facts would not alter the Court's determination that the scope of the restrictive covenant in barring solicitation of all customers…goes well beyond what is reasonably necessary." (JA 134). The court further ruled it could not "apply blue penciling to narrow the restriction on solicitation to 'any customer' without an impermissible supplementation or rewriting of contract language." (JA 133).

The district court also rejected Impact's argument that the court should construe the non-solicitation provision as applying only to the customers with whom Siniavsky had direct interactions, as Impact was waiving any injunctive relief claim and only seeking monetary damages for solicitation of clients with whom Siniavsky directly interacted. (JA 134-35). Relying solely on the unpublished Fourth Circuit case, *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004), the court concluded that "to permit Impact to reframe its claim, without even amending its Complaint, in order to avoid a finding of overbreadth would likewise provide no incentive for Impact or other employers to tailor their restrictive covenants narrowly to hose reasonably protectable interests." (JA 135).

As to Chapman, the district court determined that the facts in the record at the time of the hearing were insufficient to make a determination whether the bar of soliciting "any customer" of Impact or its Affiliates was wider than necessary to

15

safeguard Impact's legally protected interest. (JA 135-36). The court therefore denied Chapman's motion for judgment on the pleadings as to the non-solicitation clause and limited discovery to "facts relevant to the question whether that clause is wider in scope than is reasonably necessary to protect Impact's legally recognized interest in customer goodwill." (JA 136).

Rather than engaging in timely and costly discovery on this limited issue, Impact filed a praecipe in the Chapman case on December 16, 2016, which mirrored the language of the facts considered by the district court as to Siniavsky:

> Impact submits the additional facts that Dennis Chapman's customer base was only a portion of the customer base of Impact and its Affiliates and there were segments of the customer base with whom he never interacted. Mr. Chapman's sales activities covered less than Impact's entire coverage area and involved only a fraction of Impact's overall customer base.

(JA 213-15). Impact submitted that, with these additional facts, the court was "in a position to issue a ruling in this matter as to whether the non-solicitation clause is overbroad without the need for further discovery." (JA 214).

Impact and Chapman entered into a Stipulation on January 20, 2017, agreeing that Chapman's customer base when he worked at Impact was 87 customers was only a portion of the customer base of Impact and its Affiliates, which is over 1,000 customers; that Mr. Chapman's sales activity was primarily conducted in Northern Virginia and the District of Columbia, with approximately 8 customers in Maryland; and that in the 12 months prior to his departure, the sales

16

generated by Mr. Chapman from his customers (approximately $853,000) was less than five percent of the approximately $60 million sales revenue of Impact and its Affiliates.  (JA 216-18).

Chapman filed a renewed motion for judgment on the pleadings on January 26, 2017.  The court issued a memorandum opinion on April 19, 2017, granting Mr. Chapman's renewed motion for judgment on the pleadings.[3]  (JA 139-50). The court found that the non-solicitation clause in Chapman's agreement with Impact "is overbroad and unenforceable because it is not reasonably tied to Impact's interest in protecting customer goodwill."  (JA 146).  The sole factors the court examined was the size of Chapman's customer base, where they were located, and the amount of is sales in the 12 months prior to his resignation compared to the sales generated by Impact and its affiliates.  (JA 145-46).

Impact filed a joint notice of appeal in the *Siniavsky* and *Chapman* cases on May 17, 2017.  (JA 153-54).  This Court consolidated both appeals on May 18, 2017.[4]  Siniavsky and Chapman both filed cross-appeals on May 31, 2017.  (JA 155-56, 220-21).  The cross-appeals were consolidated on June 5, 2017.  The

---

[3] The court also granted Impact's motion to amend the November 18, 2016 judgment, dismiss the amended complaint in the Siniavsky mater, and enter judgment on Count I of the Counterclaim in favor of Siniavsky.  (JA 146-50).

[4] The case numbers for the appeals and cross-appeals which have all been consolidated in the instant case are: *ImpactOffice, LLC v. Chapman*, No. 17-635; *Chapman v. ImpactOffice, LLC*, No. 17-691; *Siniavsky v. ImpactOffice LLC*, No. 17-690; *ImpactOffice LLC v. Paul*, No. 17-1759; *Paul v. ImpactOffice LLC*, No. 17-1810.

consolidated appeals and consolidated cross-appeals were consolidated on June 6, 2017.

### 2. The *Paul* case

Paul's one-count complaint sought a declaratory judgment that Paul had no contractual restrictions on his working for W.B. Mason and/or soliciting Impact customers and that "the restrictive covenants contained in any agreement with Impact are unreasonable and void as against public policy." (JA 227-50). Impact filed a Counterclaim on August 29, 2016, for breach of contract, as he immediately began working for W.B. Mason following his resignation and soliciting Impact's customers. (JA 251-71). Impact sought monetary damages, as well as injunctive relief solely requesting that the court enjoin Paul from soliciting or accepting the business of any customer of Impact or its affiliates with whom he had worked for the purpose of selling or distributing office products or supplies sold by Impact or its affiliates to those customers. (JA 266).

Paul filed a motion for judgment on the pleadings on September 19, 2016. The court issued a Memorandum Opinion and Order on June 6, 2017, granting Paul's motion for judgment on the pleadings and dismissing Impact's counterclaim. (JA 272-92). The court concluded that "[a]lthough there are minor factual distinctions between the restrictive covenants in Paul and those at issue in *Siniavsky* and *Chapman*, the Court reaches the same conclusion here." (JA 278-

18

29).  Applying the same reasoning, the court found that the non-competition provision was facially overbroad because it "focuses on the nature of the competitor rather than the work performed by the former employee."  (JA 281-82). The court again reasoned that the language about "accept[ing]" business from any Impact customer and soliciting business from any "prospective" Impact customer were facially overbroad but could be blue penciled.  (JA 282).  After solely examining the size of Paul's customer base, the amount of sales he had the prior year, and that he was one of 26 Impact sales representatives, the court concluded that the non-solicitation provision "is not reasonably tied to Impact's interest in protecting customer goodwill because it covers a significantly larger customer base than that with which Paul could have developed personal relationships."  (JA 285-86).

On June 21, 2017, Impact filed an appeal of the district court's order.  (JA 293-94).  Paul filed a cross-appeal on June 27, 2017.  (JA 295-96).

## SUMMARY OF ARGUMENT

The district court erred in finding Appellee's non-solicitation provisions unenforceable for four principal reasons:

First, the district court erred in determining that Appellees' non-solicitation agreements were facially overbroad because they restrict Appellees from "accept[ing]" business from Impact's customers.  The district court did not cite to

19

any authority in support of its position, and ignored Maryland case law, such as
*Tuttle v. Riggs-Warfield-Roloson, Inc.*, 251 Md. 45 (1968) and *Holloway v. Faw,
Casson Co.*, 319 Md. 324 (1990), where the restrictive covenants were found
enforceable despite restricting the mere "engagement" in business with customers
of the former employee.  Because the "accept[ing]" language is not overly broad or
unenforceable, the district court should not have blue penciled the term from the
agreements.

Second, the non-solicitation agreements, as applied to Appellees, were not
overbroad and unenforceable merely because they restrict solicitation of "all"
customers of Impact and its affiliates, including those customers with whom
Appellees had no personal contact while employed at Impact.  Appellate courts in
Maryland have upheld non-solicitation agreements that restricted solicitation of
customers beyond those with whom the former employee had worked.  *See, e.g.,
Tuttle*, 251 Md. at 47; *Gill v. Computer Equip. Corp.*, 266 Md. 170 (1972).  Other
jurisdictions have similarly found enforceable non-solicitation agreements that
restricted solicitation of all customers and clients.  *See, e.g. Partylite Gifts, Inc. v.
Macmillan*, 895 F.Supp.2d 1213 (M.D. Fla. 2012); *Entegee, Inc. v. Korwek*, 2015
U.S. Dist. LEXIS 118263 (D. Conn. Sept. 4, 2015).

Third, even if the non-solicitation provisions were unenforceable because
they apply to all customers of Impact and its affiliates, they can be blue penciled to

20

just apply to customers with whom Appellees had personal contact. The district court erred in failing to apply the flexible blue pencil approach, applied by the Maryland Court of Special Appeals in *Holloway v. Faw, Casson & Co.,* 78 Md. App. 205 (1989), and which remains good law in Maryland. This approach would have allowed the district court to modify the terms of the agreements so as to align reasonable expectations of the parties with the reasonable expectations of the law.

Fourth, as an alternative to the flexible blue pencil approach, the district court should have found that Impact could recover money damages for the solicitation by Appellees with whom they had personal contact while employed by Impact. The Maryland Court of Appeals has affirmed damages awards where restrictive covenants are "severable on a client by client basis," as is the case here. *See Holloway*, 319 Md. at 353.

For the reasons set forth herein, Impact requests that this Court reverse the judgments of the district court.

## **ARGUMENT**

### I.    **Standard of Review.**

A Rule 12(c) motion for judgment on the pleadings is reviewed *de novo*, applying the same standard as for Rule 12(b)(6) motions. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The Fourth Circuit reviews *de novo* a

dismissal for failure to state a claim. *Hamilton v. Pallozzi*, 848 F.3d 614, 620

(2017). The Court assumes "the facts alleged in the complaint are true and draw[s]

all reasonable factual inferences" in the plaintiff's favor. *Id.*; *Burbach Broad Co.*,

278 F.3d at 406.

## II.    The district court erred in finding that the non-solicitation provisions in Appellees' employment agreements with Impact are unenforceable.

The district court should have determined that the non-solicitation provisions

in Appellees' agreements with Impact are enforceable, as they are no wider in

scope and duration than are reasonably necessary to protect Impact's interest in the

goodwill generated by its salespeople.

Under Maryland law, there are four requirements for a restrictive covenant

to be enforceable: "(1) the employer must have a legally protected interest, (2) the

restrictive covenant must be no wider in scope and duration than is reasonably

necessary to protect the employer's interest, (3) the covenant cannot impose an

undue hardship on the employee, and (4) the covenant cannot violate public

policy." *Ameritox, Ltd. v. Savelich*, 92 F.Supp.3d 389 (D. Md. 2015) (citing *Silver

v. Goldberger*, 231 Md. 1, 6-8 (1963)). A court should determine enforceability

"based on the scope of each particular covenant itself, and, if that, on its face, is

not too broad, the facts and circumstances of each case must be examined."

*Millward v. Gerstung Int'l Sport Educ., Inc.*, 302 A.2d 14, 16 (Md. 1973).

The district court correctly determined that "Impact has a legally protected interest in its customer goodwill," recognizing the distinction between the goal of preventing the departure of goodwill generated by former employees and a goal of preventing competition, which is not a legally protected interest. (JA 122). The court properly found that "Impact's sales representatives interact directly with customers and may establish personal relationships with them," which helps establish customer goodwill. (JA 122).

However, the court erred in finding that the non-solicitation provisions are wider in scope than necessary because they are not limited to just the customers of Impact and its affiliates that Appellees had contact with while Impact employees. Rather, these provisions are no wider in scope than necessary to protect Impact's legally protected interest in customer goodwill, as would be seen had the Court fully examined the facts and circumstances.

Moreover, the court erred in not applying the flexible approach to blue penciling—which remains the law in Maryland—to permit the enforcement of the non-solicitation provisions and in failing to permit Impact to seek monetary damages against Appellees for soliciting customers with whom they had interacted while Impact employees

The protections provided to Impact by the non-solicitation provisions are essential to Impact's ability to successfully conduct its business and protect

23

Impact's legitimate competitive interests. Absent the protections contained in these provisions, employees like Siniavsky, Chapman, and Paul would quit their jobs with Impact, take advantage of the investments made in them, and unfairly raid Impact's customers using their personal relationships with the customers. During their employment with Impact, Appellees had personal relationships with many Impact customers, at least some of whom ceased doing business with Impact and followed Appellees to their new employer, W.B. Mason. (JA 16).

The district court granted the motions for judgment on the pleadings even though the pleadings establish for purposes of those motions that the former employees directly solicited customers in violation of their restrictive covenants. The provisions are facially valid, narrowly tailored, and enforceable under Maryland law.

### A. The district court erred in finding that Appellees' non-solicitation provisions are facially overbroad because they do not permit Appellees to "accept" business from Impact customers.

The district court erred in determining that the restriction on "accepting" business in Appellees' agreements makes those agreements facially overbroad. The court reasoned that this language is overbroad because employers have a protectable interest in "preventing an employee from *using* the contacts established during employment to pirate the employer's customers," not just passively accepting unsolicited business. (JA 125-26). However, as the court established

24

elsewhere in its memoranda opinions, Impact's legally protected interest is in the goodwill created by its employees generally, not merely an interest in *using* such contacts to pirate customers. *See* JA 279-80 ("Impact has a legally protected interest in its customer goodwill.").

The district court does not cite any case law or doctrine in support of its arbitrary finding that "accepting" business makes a non-solicitation provision facially overbroad and points to no authority where such language was found to be facially overbroad. (JA 125-26, 283). The court ignores Maryland case law in which a non-solicitation provision that includes language beyond just "soliciting"—such as "accepting" or "engaging"—has been found enforceable. The Court of Appeals in *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 251 Md. 45, 47, 49 (1968) held that a restrictive covenant that barred the employee "from engaging either directly or indirectly, in any insurance activities with customers of Riggs-Warfield-Roloson, Inc." was valid and enforceable. In *Tuttle*, it was the employee who was approached by a customer of his former employer about having him continue to provide insurance services, not the employee himself soliciting business. *Id.* at 48. The Court of Appeals found the restrictive covenant enforceable even though "[t]he language of the covenant does not limit Tuttle's obligation to refrain from soliciting accounts, but prevented him from participating in any type of insurance activities with" a customer of his former employer—

25

which would include accepting business. *Id.* at 50-51. The district court's finding

that non-solicitation provisions that go beyond "solicitation" and instead restrict

"accept[ing]" customers are facially overbroad is directly contrary with *Tuttle.*

Similarly, in *Holloway v. Faw, Casson Co.*, 319 Md. 324 (1990), where the

restrictive covenant at issue was found enforceable, the covenant solely involved

accepting, rather than soliciting, business. The restrictive covenant instituted a

penalty against the firm's former partner if a client of the firm engaged the services

of the former partner. *Id.* at 328. In *Corporate Healthcare Fin., Inc. v. BCI*

*Holdings Co.*, 2006 U.S. Dist. 51552, at *3-4 (D. Md. July 13, 2006), the U.S.

District Court for the District of Maryland granted a motion for preliminary

judgment which enjoined the defendants "from directly or indirectly soliciting or

accepting" services, as the restrictive covenants the defendants had signed

restricted such activity. *See also Allegis Group, Inc. v. Jordan*, 2014 U.S. Dist.

LEXIS 78567, *5-6 (D. Md. June 10, 2014) (finding enforceable a non-solicitation

provisions that was not limiting to "soliciting" customers but instead barred the

employee from "approach[ing], contact[ing] or solicit[ing]").

Courts in other jurisdictions have similarly found employment agreements

that restrict a former employer from accepting or providing services to the

customers of the employer to be enforceable. In *Perry v. Moran*, 748 P.2d 224, 227

(Wash. 1987), the court determined that an agreement that restricted a former

employee from "provid[ing] services" given the difficulty in proving solicitation. The court reasoned that its conclusion was in line with other decisions in that jurisdiction that

> [S]upport the prohibition against the *performance of services* so that an employer can protect its client base without the necessity of proving the solicitation or diversion of clients (an evidentiary morass at best) but need only prove that the client of the employee had been the client of the former employer.

*Id.* (emphasis in original).

The defendants in *Howard Johnson & Co. v. Feinstein*, 609 N.E.2d 930, 935 (Ill. App. Ct. 1993) argued, as the district court reasoned here, that the restrictive covenants are unreasonably broad because they not only prohibited solicitation but also mere acceptance of former clients. The court disagreed, reasoning that "[r]estrictive covenants prohibiting the acceptance of business or the furnishing of services have been upheld even where they were ancillary to an employment relationship." *Id. See also Fournil v. Turbeville Ins. Agency, Inc.*, 2009 U.S. Dist. LEXIS 16303, *15 (D.S.C. Mar. 2, 2009) ("South Carolina law supports the view that a limit on accepting business from a former employer's clients is enforceable when the business was serviced by the former employee."); *USI Ins. Servs. LLC v. Miner*, 801 F.Supp.2d 175 (S.D.N.Y. 2011) (enforcing a restrictive covenant precluding a former employee from accepting business of a former employer).

27

Merely because a former employee "accepts" the business of the employer's customer does not mean that there was "no *use* of prior customer relationships" as the district court contends.  For instance, even if a fact finder were to determine that Paul was not soliciting Impact customers through his activity on LinkedIn, he was still using his prior customer relationships to pirate Impact's customers by accepting business from customers who contacted him after seeing he had changed his employment information on the website.

The sole example the court gives is its perceived issue about the "accept" language is a former employee getting an unsolicited phone call from an Impact customer with whom he had no contact while employed at Impact and had no knowledge of the customer's interactions with Impact, and accepting that business. (JA 126, 283).  However, the court's concern with this hypothetical seems to be that the former employee had no prior contact with this customer while at Impact, not that he is "accepting" the business.  The analysis would likely change if Appellees began receiving calls from customers they had worked with at Impact, who had been told that Appellees were now employed at W.B. Mason, and was contacting Appellees to buy office products from W.B. Mason.  In such a hypothetical, Appellees would still be *using* prior customer relationships to get business.

28

Permitting "accept" language in a restrictive covenant also helps avoid a dispute about whether an employee actually solicited business from the former employee. *See Perry*, 748 P.2d at 227. In order to show Appellees had breached the non-solicitation agreement, Impact would only need to prove the customer now doing business with Appellees was a former customer, without needing to dispute whether the customer was solicited, which can often be difficult. The language further protects against former employees, like Appellees, attempting to circumvent the "solicitation" language. For instance, if W.B. Mason employees contact Impact customers with whom Appellees worked and let them know Appellees are now employed by W.B. Mason and to reach out to them to place orders, this would certainly be using prior customer relationships without necessarily directly soliciting.

For these reasons, though the district court correctly determined that the "accept" language could be blue penciled, there was no need to do so because the language is enforceable and not facially overbroad.

### B. The non-solicitation provisions are permissible even if they restrict solicitation of all customers of Impact and its affiliates.

The district court properly determined that the language in the non-solicitation provisions barring solicitation of all customers of Impact or its affiliates is not facially overbroad but erred in finding that the facts and circumstances as applied to Appellees made the provisions overbroad and

unenforceable.  Rather than fully examining the facts and circumstances, the court

merely looked at the size of Appellees' customer bases, sales revenue, and

geographic location of their customers in reaching its conclusion.  (JA 131-35,

145-46, 284-87)

When the scope of a restrictive covenant is facially reasonable, courts must

examine the facts and circumstances of the individual case.  *See Ameritox, Ltd. v.

Savelich*, 92 F.Supp.3d 389, 399 (D. Md. 2015).  "Maryland courts have upheld

restrictive covenants that bar solicitation of all clients of a former employer, so

long as the restriction is reasonable when considering all the facts and

circumstances."  *Severn Mktg. Assocs. v. Doolin*, 2010 U.S. Dist. LEXIS 102992,

at *4 (D. Md. Sept. 29, 2010).

The Maryland Court of Appeals in *Millward v. Gerstung Int'l Sport Ed.*, 268

Md. 483 (1973), set forth factors to consider in determining whether a restrictive

covenant is enforceable:

> [A] determination of enforceability should be made based on the scope of
> each particular covenant itself, and, if that, on its face, is not too broad, the
> facts and circumstances of each case must be examined. Some of the factors
> to be considered in such an examination are whether the restriction is
> reasonable in area and duration, the hardships its enforcement might impose
> on the employee, the interests of the public, and whether the employee
> sought to be enjoined performs unique services, is soliciting customers,
> using trade secrets, assigned routes, customer lists, or is exploiting personal
> contacts established between the employee and his customers during his
> employment.

268 Md. at 488 (citation omitted).

30

Maryland courts (and federal courts applying Maryland law) have enforced restrictive covenants that are not limited to customers with whom the former employee had personal contacts. *See Ameritox*, 92 F.Supp.3d at 399 ("Maryland has enforced restrictive covenants barring solicitation of all of an employer's clients."). *See, e.g.*, *Millward v. Gerstung Int'l Sport Ed.*, 268 Md. 483 (1973); *Ruhl v. F.A. Bartlett Tree Expert Co.*, 245 Md. 118 (1967); *Intelus Corp. v. Barton*, 7 F.Supp.2d 635 (D. Md. 1998). In *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 251 Md. 45, 47 (1968), the Court of Appeals permitted enforcement of a covenant that barred the former employee from "engaging either directly or indirectly, in any insurance activities with customers" of the former employer for a period of two years. This provision precluded the former employee from soliciting any and all of his former employer's customers. *Id.* The Court of Appeals in *Gill v. Computer Equip. Corp.*, 266 Md. 170, 180-81 (1972), permitted enforcement of a restrictive covenant barring solicitation of all customers of the division where the former employee had worked, regardless of whether Gill had worked with the customer.

In *Severn Mktg. Assocs., Inc.*, 2010 U.S. Dist. LEXIS 102992, at *12, the former employee was prohibited from soliciting "any Principal," not just those manufacturing companies (called "principals") with whom he worked or had relationships. The court rejected the argument that covenants that prohibit solicitation of all customers of the former employer are facially overbroad. *Id.* at

31

*12-13. The court found that while it is conceivable that a former employee could present evidence that shows that a non-solicitation prohibition that covers all customers is overbroad, "that determination would turn on a variety of facts and circumstances." *Id.* at *13. Though the court found that the employee would likely need to show there were some Principals that she did not have contact with, the court did not rule out other factors and circumstances to be considered: "[t]he existence, nature and extent of those relationships, along with the circumstances surrounding her termination and subsequent hiring by MicroLambda, obviously cannot be found in the language of the restrictive covenant." *Id.* at *14.

A former employee in *General Parts Distr., LLC v. St. Clair*, 2011 U.S. Dist. LEXIS 145055, at *3 (D. Md. Dec. 14, 2011), signed an agreement preventing him from soliciting business from the former employer's Key Account List for one-and-a-half years after leaving employment and was not limited to just the customers with whom he had worked. The court noted that the employee was not barred from soliciting new clients, but was "merely restricted in his ability to solicit [the former employers'] customers." *Id.* The court reasoned that the provision was reasonably necessary to protect the employer's customer goodwill and was narrowly tailored. *Id.* at *11.

In *Fowler v. Printers II*, *Inc.*, 89 Md. App. 448, 456 (1991), the plaintiff was a salesperson who entered into a contract with the defendant employer agreeing not

32

to divert or solicit the defendant's business.  The covenants were limited to accounts and customers that had contact with the defendant during the 12 months prior to the plaintiff's termination.  *Id.*  Within 24 hours of resigning, the plaintiff began working for a competitor and contacting the accounts she had previously serviced.  *Id.*  While the court in *Fowler* limited its holding to addressing clients "actually served by the employee," the court stated that if such questions were before it, the covenant at issue would be enforceable.  *Id.* at 464.

Courts in other jurisdictions have similarly found enforceable non-solicitation provisions that were not limited to the customers with whom the employee worked.  In *Mercator Risk Servs., Inc. v. Girden*, 2009 U.S. Dist. LEXIS 17879, *4 (S.D.N.Y. Feb. 23, 2009), the former employer signed a non-solicitation agreement stating that for 12 months he could not "directly or indirectly solicit Wholesale Insurance Business from any client or customer of Mercator," who was a client or customer in the 12 months prior to the termination.  The court held that the scope of the non-solicitation agreement was reasonable because it was not depriving the employee of his ability to engage in the retail brokerage business, which he was leaving to pursue.  *Id.* at *12.  The court also found the provision reasonable because it prohibited solicitation of only those customers that were customers during the employee's final 12 months of employment.  *Id.*

33

The court in *Partylite Gifts, Inc. v. MacMillan*, 895 F.Supp.2d 1213, 1226-28 (M.D. Fla. 2012) found unpersuasive an employee's argument that the scope of the non-solicitation provision is overbroad because it precluded her from soliciting consultants that were not within her direct chain. *See also Entegee, Inc. v. Korwek*, 2015 U.S. Dist. LEXIS 118263, *12-15 (D. Conn. Sept. 4, 2015) (finding the non-solicitation provision likely to be enforced where the employee was barred from soliciting all clients of the former employer, even those with whom he had no contact); *Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526 (Fla. Dist. Ct. App. 2003) (holding that an injunction prohibiting a doctor from seeing patients from the medical practice where he formerly worked was not overbroad and should not have been limited to just the patients he had treated while employed at the practice); *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 556 S.E.2d 331, 335 (N.C. Ct. App. 2001) (finding a covenant "restrict[ing] defendant, for two years, from soliciting any customers having an active account with plaintiff at the time of his termination" enforceable).

The district court erred in finding that the facts presented in the record show that the non-solicitation provisions are wider than necessary to protect Impact's interest. (JA 285-87). The court based its findings on just two factors: Appellees' customer bases were only a limited portion of the customer base of Impact and its affiliates and there were segments of the customer base with which they never

34

interacted.  (JA 132, 145-46, 286).  There is no evidence in the district court's

opinions that they considered any of the other *Millward* factors.  The court should

have instead considered factors such as whether the geographic area and duration

were reasonable, any hardships its enforcement would have on Appellees, and

whether Appellees are using customers lists.  *See Millward*, 268 Md. at 488.

For these reasons, the district court erred in finding Appellees' non-

solicitation agreements overbroad and unenforceable.

### C. The district court erred in finding that, even if a non-solicitation provision applying to all customers is overbroad, money damages could not be recovered for solicitation of customers with whom the former employee had personal contacts.

The district court erred in determining that Impact could not seek monetary

damages for former employees who solicited customers in violation of their non-

solicitation provisions.  This is directly contrary to Maryland law.  If a non-

solicitation provision covers customers with whom the former employee had no

personal contact, the employer can still recover money damages for solicitation of

the customers with whom he did have personal contact.  *See Holloway*, 319 Md. at

342-47.

In *Becker v. Bailey*, 268 Md. 93 (1973), the Maryland Court of Appeals held

that, on the facts of that case, an injunction could not issue to enforce a non-solicit

agreement that covered all the customers of the former employer.  The Court

noted, however, that its "decision would not prohibit the seeking of appropriate

35

relief if [the former employee] started soliciting the customers of the [former employer]." *Id.* at 102.

The issue again arose in the Maryland Court of Appeals in the *Holloway* case. In that case, the non-solicitation provision covered all the clients of the former employer, not only those with whom the former employee had had personal contact. 319 Md. at 327-28. The court noted that some courts in other states had invalidated a covenant "because it was not limited to clients for whom the departing accountant actually rendered services at the firm." *Id.* at 345. However, the *Holloway* court held that this legal issue was "not presented here" because the former employee "acknowledged in his testimony that each person as to whom a claim for damages was made against him was a client of FC [the former employer] whom Holloway had served while he was at FC." *Id.* The Court of Appeals affirmed the damages award, concluding that the covenant was "severable on a client by client basis." *Id.* at 353. The court determined that the question of whether a provision is unenforceable because it was not limited to clients with whom the former employee had rendered services is not presented where only money damages were being sought. *Id.*

Similarly, in *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 463-64 (1991), the Court of Special Appeals held that the question of whether a non-solicitation clause that covers all customers is overbroad was "not presented here" where the

36

former employer "sought, and the lower court awarded, only money damages, relating to clients actually served by the employee." Injunctive relief had been granted and then the Court applied the analysis of *Holloway*, which provides that if only damages are being sought, then the question of facial over breadth is not presented.

*Holloway* and *Fowler* are directly on point here. In the Siniavsky matter, Impact is solely seeking money damages with respect to the clients with whom he had personal contact while employed by Impact.[5] As stated in its counterclaim, Impact is solely seeking to enjoin Paul from "soliciting or accepting the business of any customer of Impact or its Affiliates **with whom he had worked** for the purpose of selling or distributing office products or supplies sold by Impact or its Affiliates to those customers for the period of time set forth in the Agreement" and money damages for "the harm already incurred by Impact." (JA 266) (emphasis added). Clearly, this is permissible under Maryland law, without regard to whether the non-solicitation covenant would be overbroad if damages or injunctive relief were sought for clients with whom Appellees' had not had personal contact.

Furthermore, under Maryland law, an overbroad provision in a restrictive covenant may be severed if it is "divisible in terms." *Holloway*, 319 Md. at 341. In *Holloway*, the non-solicitation covenant applied to both clients that the former

---

[5] While Impact sought injunctive relief and other damages in its amended complaint, it waived its request for injunctive relief. (JA 73-74).

employee had had personal contact with and those that he had not. The Court of

Appeals held that this type of language was "severable on a client by client basis,"

which made it unnecessary to reach the overbreadth issues address by the lower

court. *Id.* at 326-27, 353. In this case, the non-solicitation covenant is also

"severable on a client by client basis" – severing those customers without personal

contact, but applying the covenant to those customers with whom Appellees did

have personal contact while employed with Impact.

**D. The district court erred in not applying the flexible approach to blue penciling and allowing language of the non-solicitation agreement to be supplemented.**

Maryland law permits the court to "blue pencil" or excise overly broad

language. Courts are permitted to not only excise language but also rewrite the

covenant if necessary. *See Holloway v. Faw, Casson & Co.,* 78 Md. App. 205

(1989) ("*Holloway I*"), *affirmed in part, reversed in part on other grounds by*

*Holloway v. Faw, Casson & Co.*, 319 Md. 324 (1990) ("*Holloway II*").

While the district court did blue pencil the non-solicitation agreements—by

excising the words "accept" and "prospective customers"—it erred in refusing to

apply the "flexible approach" to blue penciling that is permissible in Maryland.

Maryland courts have examined which approach to blue penciling to take: whether

a court can only blue pencil an overly broad covenant (the strict divisibility

approach) or whether the court can rewrite the covenant (the flexible approach). In

*Holloway I,* the Court of Special Appeals upheld the circuit court's modification of a noncompete clause by reducing the number of years in the restrictive covenant from five years to three years in order to make the covenant "reasonable." 78 Md. App. at 239.  After considering the criticisms of the flexible approach, the court stated that "on the whole, the numerous justifications underlying this method outweigh the consideration behind the formalistic strict blue pencil approach" and that this approach is "the law in this State." *Holloway I,* 78 Md. App. at 237.  The Court of Appeals did not disturb the lower courts' application of this "flexible" blue pencil approach. *Holloway II*, 319 Md. at 326-27.  The Court of Special Appeals' application of this approach remains good law in Maryland.

In *Fowler*, the Court of Special Appeals permitted the "excision of offending contractual language without supplementation or rearrangement."  89 Md. App. at 465.  The case did not go to the Court of Appeals, and the Court of Appeals has not addressed the blue pencil doctrine.  While the district court in *Medispec, Ltd. v. Chouinard*, 133 F.Supp.3d 771, 775 n.3 (D. Md. 2015), stated that "Maryland courts have excised restrictions that render a covenant overbroad only in circumstances in which the restrictions are contained in a separate clause or separate sentence," there is no Maryland law requiring the blue-penciled language to be an independent sentence or clause or requiring only the excising, rather than the changing or supplementing, of words.

39

"[T]here is an open question whether Maryland law would allow" a court to enforce a covenant partially. *See Corporate Healthcare Fin., Inc.*, 2006 U.S. Dist. LEXIS 51552, at *27-28 (citing *Holloway I*, 78 Md. App. at 237-38; *Holloway II*, 572 A.2d at 524). The court determined that if the "flexible" approach is valid under Maryland law, at least as applied to the facts of that case, enforcement of the covenant as to the clients serviced by the former employer could be permissible. *Id.* at *27. The court held that the plaintiffs had "made a colorable argument that even if the court finds one or more aspects of the covenant to be unreasonable, it would not necessarily be prohibited from partially enforcing the covenant under Maryland law." *Id.* at *28.

As discussed in *Holloway I*, other states courts have adopted the flexible approach:

> *See, e.g., Smith, Batchelder & Rugg v. Foster*, 119 N.H. 679, 406 A.2d 1310, 15 A.L.R. 4th 551 (1979) (stating that courts reform overly broad restrictive covenants if the employers first show that they acted in good faith); *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11 (Fla. 1974) (3 year, 50 mile noncompetition clause in employment contract, reduced to reasonable restriction); *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975) (court held that it would enforce unreasonable noncompetition clause to extent necessary to protect employee's legitimate interests); *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn.1980) (5 year period in employee noncompetition agreement reduced to 1 year); *Bob Pagan Ford, Inc. v. Smith*, 638 S.W.2d 176 (Tex. App. 1st Dist.1982) (3 year noncompetition clause in an employment contract reduced to 6 months); *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970) (For an in depth discussion on the issue). This is also the position taken in the Second Restatement of the Law of Contract in a complete reversal of positions since

40

the publication of the first Restatement, *supra*. *See* Restatement (Second) of Contracts § 184 comment b illustration 2 (1979).

78 Md. App. at 236. The *Holloway I* court further cited to a ruling by the Supreme Court of New Jersey, overruling its adherence to strict blue penciling:

> [T]he rule of divisibility or selective construction has, at the expense of the basic values, exalted formalisms and rewarded artful draftsmanships. In the process individual results have been reached which hardly conform with any sound equitable concepts. In some instances, judges have upheld sweeping noncompetitive agreements in circumstances which suggest that, if their equitable power to do so had been recognized, they would have cut them down to satisfy the particular needs at hand. In other instances, they have stricken noncompetitive agreements in their entirety, as too broad, though justice and equity seemed to cry out for the issuance of appropriately limited restraints which would simply protect the legitimate interests of the covenantee in reasonable fashion, would not subject the covenantor to any undue hardship, and would not impair the public interest.

*Holloway I*, 78 Md. App. at 236-37 (quoting *Solari Industries, Inc. v. Malady*, 264 A.2d 53, 60 (N.J. 1970)).

Though the fundamental law of contracts provides that "where the terms of a contract are clear and unambiguous the court may not rewrite the contract for the parties to avoid a hardship," Maryland "has never considered noncompetition clauses according to strict traditional contract theories." *Holloway I*, 78 Md. App. at 237. In applying the flexible approach, the *Holloway I* court set forth a two part test:

> 1) Does the restrictive covenant as a whole evidence a deliberate intent by the employer to place unreasonable and oppressive restraints on the employee/covenantee? If so, then the entire covenant is invalidated, whether severable or not. (2) If the agreement, although unreasonable, satisfies the

41

> test in part 1, then the court should modify the express terms so as to align the reasonable expectations of the parties to the reasonable expectations of the law, so long as it is fair to do so.

*Id.* at 238-39. The *Holloway* court determined that the employer did not intend to place unreasonable and oppressive restraints on the employee. *Id.* at 239.

The U.S. District Court for the District of Maryland has improperly limited blue penciling to removing language rather than supplementing or rearranging the remaining language. *See Deutsche Post Global Mail, Ltd. v. Conrad*, 292 F.Supp.2d 748, 754 (D. Md. 2003); *Allegis Group, Inc.*, 2014 U.S. Dist. LEXIS 78567, at *28-29 (using the blue pencil rule to excise the employee non-solicitation provision from the rest of the restrictive covenant in the employment agreement). This Court upheld the district court's opinions but only in an unreported opinion. *See Deutsche Post Global Mail*, 116 Fed. Appx. 435, 439 (4th Cir. 2004) ("A court can only blue pencil a restrictive covenant if the offending provision is neatly severable.").

Pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), it is not the role of federal courts to create or expand Maryland policy in a diversity suit. *See St. Paul Fire & Mar. Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995). "Under *Erie Railroad v. Tompkins*, the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion." *Id.* Rather than following the *Erie* doctrine, the district court gave improper weight to the unreported Fourth

Circuit opinion, *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. Appx. 435 (4th Cir. Nov. 19, 2004). Unpublished decisions are not binding on the Fourth Circuit. *See Minor v. Botswick Labs, Inc.,* 669 F.3d 428, 433 (4th Cir. 2012); *see also Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (unpublished Fourth Circuit decisions do not have precedential weight).

Citation to an unpublished opinion, like *Deutsche Post*, is disfavored. Fourth Circuit Local Rule 32.1 provides:

> Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

> If a party believes, nevertheless, that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met.

Reliance on *Deutsche Post*, which was decided on November 19, 2004—prior to January 1, 2007—is therefore disfavored. The case does not have precedential value and should not be relied upon because there are published, Maryland opinions "that would serve as well." *See* Local Rule 32.1. Rather than relying heavily on *Deutsche Post* in its decision on blue penciling, the district court should have applied the flexible blue pencil approach, which is the law in Maryland. (JA 129-30, 287-90).

In applying the flexible approach set forth in *Holloway I*, the restrictive covenants in Appellees' agreements do not evidence a deliberate intent by Impact to place unreasonable and oppressive restraints on them.  78 Md. App. at 238. Since there was not such a deliberate intent, even if the non-solicitation provisions are unenforceable, the court could modify the express terms so to align the reasonable expectations of the parties to the reasonable expectations of the law.  *Id.*

In doing so, the district court should have applied the flexible blue pencil approach to add language to the agreements in order to correct its perceived problems with enforceability.  This could be done by adding the underlined language to the agreements: "Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates, <u>with whom Employee had personal contact during employment with the Company,</u>…" Making such a change is in line with the purpose of blue penciling: to find a way to align restrictive covenants with the reasonable expectations of the parties. *Holloway I*, 78 Md. App. 238-39.

## CONCLUSION

Appellant ImpactOffice LLC respectfully requests that this Court reverse the decision of the District Court.

Respectfully submitted,

/s/   Alyse L. Prawde
Timothy F. Maloney
Jay P. Holland
Alyse L. Prawde
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200


/s/   Douglas C. Herbert
Douglas C. Herbert
LAW OFFICE OF DOUGLAS C. HERBERT
1730 Rhode Island Ave., NW, Suite 608
Washington, D.C. 20036
(202) 659-1400

*Counsel for Appellant*

## Certificate of Compliance with Rule 32(a)

1.      This brief was prepared using proportionally spaced, serif typeface (Times New Roman, 14 point) using Word 2007.

2.      Exclusive of the table of contents, table of citations, request for oral argument, and the certificate of service, the brief complies with Fed. R. App. Proc. 32(a)(7)(B) because it contains 10,586 words.

3.      I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, we will provide an electronic version of the brief and/or a copy of the word or line print out.

/s/   Alyse L. Prawde_____
Alyse L. Prawde


## Request for Oral Argument Pursuant to Local Rule 34(a)

This appeal raises important and reoccurring legal issues related to the enforceability of employees' non-solicitation agreements. Appellant submits to the Court that oral argument would be beneficial in this matter and respectfully requests that the Court schedule a date for arguments.

/s/   Alyse L. Prawde_____
Alyse L. Prawde

46

## Certificate of Service

I hereby certify that on the 5th day of September, 2017, this Appellant's Brief was served via ECF on Vernon Johnson, III, Esq.


/s/   Alyse L. Prawde_____
Alyse L. Prawde